Filed 3/30/15  In re I.H. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

**(Sacramento)**

----

| | |
|---|---|
| In re I.H., a Person Coming Under the Juvenile Court Law. | C076307 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD234291) |
| Plaintiff and Respondent, | |
| v. | |
| F.T., | |
| Defendant and Appellant. | |

F.T. (mother) appeals from the dispositional order of the juvenile court.  She contends insufficient evidence supports the juvenile court's jurisdictional and dispositional findings.  We conclude substantial evidence supports a jurisdictional finding that the minor I.H. has suffered or will suffer serious physical harm inflicted nonaccidentally by mother, and that substantial evidence supports a dispositional finding

1

removing I.H. from mother's physical custody. Therefore, we affirm the juvenile court's findings and orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Detention Report*

Mother and seven-year-old I.H. were in an emergency room lobby, where they sometimes slept, on December 25, 2013. There they met a woman who paid for them to stay in a motel that night and told mother to call if she and I.H. needed help. On December 31, 2013, mother called the woman (whom we shall refer to as the homeowner) because she and I.H. had nowhere to stay that night. The homeowner picked them up from a light rail station and allowed mother and I.H. to move into her house.

On January 26, 2014, mother and the homeowner had an argument, after which the homeowner asked mother to move out. According to the homeowner, mother had consumed an entire box of wine and had begun yelling at the homeowner, calling her names, and threatening her children. According to I.H., mother was drinking wine because she was "stressed about . . . [being] kick[ed] out of the house"; mother was arguing with the lady who owned the house; mother directed I.H. to sit down; and mother grabbed I.H. by the hair and hit I.H. across the face with an open hand, cutting her forehead. The police were called and informed that mother had hit I.H. Mother appeared to officers to be under the influence of alcohol: A strong alcoholic odor was coming from her person and she had trouble answering basic questions. The minor informed officers that mother "normally only hits [her] when [she] do[es]n't listen." Mother was arrested and I.H. was placed in protective custody.

The next day, I.H. met with a social worker and reported that mother had pulled her hair, slapped her in the face, and thrown her to the ground without reason after mother drank " 'a lot of wine' " and "argu[ed] with the owner of the house." I.H. had hit

2

her head on the floor when mother pushed her to the ground and had an abrasion on her face. I.H. also reported that mother, the week before, had been drinking again, and had hit I.H., made fun of her, and started kicking her in the leg.

Mother also spoke with the social worker, and admitted drinking "a 'little bit' of wine" on the day of the incident but denied being intoxicated or having an alcohol problem. She contested hitting I.H., but explained that they were rushing around, going in and out of the house, and that I.H. may have hit her head on something in the process. Mother also argued she did not have a history of violence and claimed that when she did discipline the minor, she spanked her or might slap her on the arm or shoulder.

I.H. claimed she had last seen her father when she "was still a baby" and recollected witnessing domestic violence between mother and father. The social worker spoke with father, who recounted that mother had been violent towards him, other people, and vehicles. He also recalled that he had dropped off gifts to I.H. at the motel where she and mother were staying in December 2013 (though he later stated that he had given the gifts to mother for I.H.). Father denied a history of alcohol or substance abuse but admitted multiple convictions for driving under the influence.

I.H. had previously been detained by the Sacramento County Department of Health and Human Services (the Department) in 2007 when mother was arrested for elder abuse after hitting her uncle with whom she and I.H. were living. The Department also investigated four other referrals involving mother and I.H. In 2007, while arguing with father, mother had hit him with a car, knocking him to the ground while he was holding I.H. In 2008, mother and father were arguing again, and when the argument became physical mother had knocked I.H. down. In 2013, a mandated reporter informed the Department mother and I.H. spent the night in an emergency room lobby after mother brought I.H. to the hospital despite I.H.'s perfect health. Also in 2013, the Department

3

was informed mother and I.H. were living in a storage unit with no bathroom or running water.

## B. *Jurisdictional Petitions*

On January 28, 2014, the Department filed a juvenile dependency petition, and on March 14, 2014, filed an amended petition alleging that I.H. comes within the jurisdiction of the juvenile court pursuant to subdivisions (a), (b) and (g) of section 300 of the Welfare and Institutions Code.[1] The Department subsequently moved to strike subdivision (g) as a basis for jurisdiction. Thus, as amended, the petition alleges the following bases for jurisdiction:

"a-1   On or about January 26, 2014, the mother . . . inflicted serious physical harm on and about the child, [I.H.], . . . , in that the mother hit the child in the head causing the child to sustain an abrasion to her forehead, pulled the child's hair and threw the child to the ground. The child had a cut on her forehead above her right eyebrow about an inch in length and [a] small abrasion/scab on [her] left cheek. . . . Such actions by the mother place the child at risk of suffering further physical and emotional abuse."

"b-1   On or about January 26, 2014, the mother . . . inflicted serious physical harm on and about the child, [I.H.], . . . , in that the mother hit the child in the head causing the child to sustain an abrasion to her forehead, pulled the child's hair and threw the child to the ground while under the influence of alcohol. The child had a cut on her forehead above her right eyebrow about an inch in length and [a] small abrasion/scab on [her] left cheek. . . . Such actions by the mother place the child at risk of suffering further physical and emotional abuse.

"b-2   The child's father . . . has a history of substance abuse since 2004 from which he has failed and/or refused to rehabilitate from [*sic*] and which impairs his

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

4

judgment and ability to provide adequate care and supervision for his child, [I.H.], . . . , in that the father has used methamphetamine as recently as February 20, 2014. The father's continued use of illicit substances places the child at substantial risk of physical harm, abuse and/or neglect.

"b-3    The child's mother . . . and the child's father . . . have a history of domestic violence. The domestic violence includes but is not limited to the father pushing the mother down causing the mother to sustain a fracture to her spine which required medical attention. Additionally, on or about May 2007, the parents were involved in an argument and the mother put her car in reverse and hit the father with the car and knocked him to the ground while he was holding the child, [I.H.], . . . and the child landed on the father's chest. These incidents have occurred in the presence of the child and place her at substantial risk of harm and/or abuse."

## C. *Jurisdiction/Disposition Reports*

A social worker spoke with mother regarding the allegations, which mother claimed were " 'false and overly exaggerated.' " Mother denied hitting I.H., throwing her to the ground, and pulling her hair, and instead claimed "[t]here was a lot going on that day and it was a bad day for both [of them]." She claimed to have consumed only one glass of wine, denied having a drinking problem, and asserted that hitting the minor with her open hand could not have resulted in the scratch the minor suffered. Mother alternately claimed I.H.'s injuries were a result of I.H. running into a heavy glass door, being pulled by a dog, and possibly being scratched by mother's nails while mother walked in and out of the house to use her cell phone. Mother denied needing any services or parenting classes, and described her demeanor as calm and not violent.

Mother was not supportive of transitioning the minor to foster placement; she told the minor that foster care was " 'just temporary' " and, when the minor cried about going to a foster home, mother told her " 'that's what happens when you tell people I hit you,

5

they have to protect you.' " Mother was also disrespectful toward the visitation monitor, came late for her visitation appointment, ignored prompts from the visitation counselor when it was time for the visit to end, and would not leave the area when the appointment ended. Following one visit, the social worker told mother she could not discuss the case with the minor or make any promises or predictions. Mother responded that "she would tell the [minor] whatever she wants because she is the mother." Mother's supervised phone conversations had also been limited because she did not abide by the rules.

I.H. claimed the police were called for no reason and that her mother had not hit her or pushed her to the ground, but that she had tripped and fallen. After being reminding to tell the truth, I.H. acknowledged that mother pulled her hair, but claimed it was an accident because she was not listening to mother. I.H. also admitted her mother had hit her in the face, but again claimed it was because I.H. was not listening. I.H. told officers following the January 26 incident that the cut on her face did not hurt and that the abrasion on her cheek had happened while she had been walking dogs the week before. I.H. also recounted to the social worker having seen father hit and push mother and mother throw things at father. I.H. also reported that mother drinks wine daily, and recalled a time riding with mother and father when father was "driving 'crazy' " and she was afraid they would fall off the bridge. I.H. also stated that mother normally disciplined her by spanking her with objects but did not say what objects.

Father admitted using marijuana regularly, admitted drinking every few months, and denied use of any other illicit drugs. Father also denied having a substance abuse problem, but admitted multiple drug- and alcohol-related arrests and convictions. Since his 2011 conviction and incarceration for driving under the influence, father had not obtained treatment, attended support meetings, had his driver's license reinstated, or stopped drinking alcohol or smoking marijuana. Father also had repeated positive tests for marijuana and methamphetamine and he failed to appear for support services during

the pendency of the instant matter. Father claimed mother had been the aggressor in domestic violence incidents between them, and had hit him, thrown gin in his eyes, tried to run him over on multiple occasions, and had broken the paternal grandmother's windows and slashed her tires. I.H. was reluctant in her first visit with father during her detention, but in later visits was excited to see him. An addendum report filed by the Department indicated father was not eligible to receive reunification services because of his multiple criminal convictions.

### D. *Jurisdictional Hearing*

Mother testified she had not hit the minor on the head, pulled the minor's hair, or thrown the minor to the ground. Also, though she denied having seen the cut on the minor's face or forehead, she claimed it was the result of mother and the minor going in and out of the house through the heavy patio door.

The juvenile court found "the mother's credibility is entirely lacking," saying, "the Court cannot find [mother] to have been credible and that starts, in part, with the administration of the oath and the promise to tell the truth over which the mother paused for a considerable amount of time before . . . determining that she would promise to tell the truth, and then there flowed an enormous amount of testimony that was simply not to be believed." Moreover, the juvenile court noted, "[a]nother factor in terms of weighing the credibility of the only live witness [(mother)] was her inability to answer questions directly, an abundance of hesitation prior to the response, and lack of clarity and spontaneity in those responses." The juvenile court found credible the Department's report, which "is replete with incidents of violence perpetrated by the mother." Thus, the juvenile court sustained the jurisdictional petition finding the allegations contained therein to be true by a preponderance of the evidence.

7

## E.  *Dispositional Hearing*

Mother testified I.H. should be returned to her care because mother has always "protected [and] provided for" I.H., I.H. was not in substantial danger to her physical health or emotional well-being, and there are reasonable means by which I.H.'s well-being can be protected without removing her from mother's care.  Mother stated she would protect I.H. by educating her, investing time in her, speaking to her, and preventing her from communicating with the wrong people.  When asked if she would be able to use appropriate discipline techniques, mother responded that she would continue to use the same techniques she has used, which included timeouts and talking to I.H.  Mother also acknowledged that she had been the victim of abuse by father, but did not acknowledge that she had been the perpetrator of any domestic violence.  She agreed to participate in parenting services but did not believe other services, i.e., domestic violence or anger management, were relevant to her.  Indeed, she continued to deny she is an angry person or has a drug or alcohol problem.  Contrary to her counsel's direction, mother also challenged the accuracy of the dispositional report and the restrictions on her visitation with the minor.  The juvenile court noted that mother's "continued demonstrated inability to maintain boundaries is really problematic."

Father also testified at the dispositional hearing.  He admitted having three convictions for driving under the influence, but stated he would be willing to engage in any services ordered by the court.  Father stated a desire to be a part of the minor's life and testified he made efforts to be at all visits since the minor had been detained.  However, the court noted that father was still testing positive for drug and/or alcohol use in February and March 2014.

The court found, by clear and convincing evidence, that there was a substantial danger to I.H.'s physical health, safety, protection, or emotional well-being if she were returned to mother or father and there are no reasonable means to protect her without formal removal from her parents' physical custody.  The court was convinced I.H. would

8

not be safe in mother's custody because mother remains in denial about the sustained allegations, the history of domestic violence, and the harm I.H. suffered. That, coupled with mother's inability to maintain boundaries, mother's encouraging secret-keeping by chastising I.H. for having disclosed the abuse, mother's failure to begin any parenting classes despite being provided the opportunity to do so, and mother's inability to understand the damage her conduct was having on I.H., caused the court to believe if I.H. were returned, she would be in physical and emotional danger. The court ordered reunification services for mother, including domestic violence counseling, parenting, group and individual counseling, and a mental health assessment. But it concluded father was not entitled to reunification services based on his extensive history of substance abuse and resistance to treatment relative to that abuse.

## DISCUSSION

### I.  Standard of Review

"When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible, and of solid value—to support the conclusion of the trier of fact. [Citations.] In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. [Citations.] The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence." (*In re I.R.* (2014) 226 Cal.App.4th 201, 211.) Moreover, in light of this standard of review, arguments by mother that " 'only tend to establish a factual context which, had it been credited by the trial court, might have led to a different decision,' " are facially meritless. (*In re Charmice G.* (1998) 66 Cal.App.4th 659, 664.)

9

## II. Jurisdiction

Mother contends there is insufficient evidence to support the jurisdictional findings because I.H. was not seriously injured, there is no risk of future abuse because I.H.'s injury was the result of an accident and not discipline at the hands of mother, and there is no risk from domestic violence because there is no ongoing violence between mother and father. The Department contends mother forfeited this contention because she does not challenge the jurisdictional finding premised on father's conduct. The Department further argues that even if the contention is not forfeited, there is substantial evidence to support the jurisdictional findings. Though we reach the merits of mother's contention, we reject it, concluding substantial evidence supports the juvenile court's jurisdictional findings.

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.' [Citation.] However, we may also exercise our discretion to reach the merits of a challenge to any jurisdictional finding when the finding may be prejudicial to the appellant, and here, the finding that mother intentionally hurt her daughter has the potential to impact future dependency proceedings." (*In re D.P.* (2014) 225 Cal.App.4th 898, 902.) Therefore, we address mother's challenge to the court's jurisdictional findings based on her conduct despite her failure to challenge the jurisdictional finding premised on father's conduct.[2] Nonetheless, if any of the three jurisdictional bases relative to

---

[2] We also reject the Department's assertion that mother's failure to identify a challenge to the jurisdictional findings in her notice of appeal amounts to a forfeiture of that claim. As the Department notes, we liberally construe notices of appeal. (Cal. Rules of Court, rules 8.100(a)(2) & 8.405(a)(3); see *In re Joshua S.* (2007) 41 Cal.4th 261, 272.) And we note mother did appeal the first appealable order. (*In re Athena P*. (2002) 103 Cal.App.4th 617, 624 [" ' "The first appealable order in the dependency process is

mother's conduct is supported by substantial evidence, the juvenile court's jurisdictional finding must be affirmed regardless of whether any of the other alleged grounds for jurisdiction is supported by the evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Mother's contention that I.H. was hurt accidentally and not as a result of mother's discipline relies on her version of the events. We are not obliged to accept mother's proffered version of events—that I.H. had been cut when she ran into a patio door or ran into mother's fingernails. (*In re Maya L.* (2014) 232 Cal.App.4th 81, 104, fn. 6 [reviewing court has no power to reweigh evidence or to revisit credibility of a witness].) Indeed in making its findings, the juvenile court expressly found mother's testimony was not credible and it apparently rejected her version of events as reported in the Department's reports in favor of the version reported by I.H., the police, and the homeowner.

Mother also relies on *In re Isabella F.* (2014) 226 Cal.App.4th 128 to contend there is insufficient evidence I.H. has suffered or will suffer serious physical harm. We conclude that case is factually inapt. There, the court held there was insufficient evidence to support a jurisdictional finding that the child had suffered or would suffer serious physical harm where the "mother hit [the child] in the face, grabbed her by the neck, and locked her in the bathroom" and where the child had apparent fingernail scratches on one side of her face and a gouge mark on one ear. (*Id.* at pp. 131-132, 139.) The mother admitted to spanking the child, but denied hitting her face and claimed that any scratches would have been accidental. (*Id.* at p. 132.) There was evidence this was the first time anything like this had happened. (*Ibid.*) And since the detention, the mother had begun

the dispositional order. [Citation.]" ' [Citations.] The jurisdictional order is interlocutory and not appealable. Hence . . . any challenge to the jurisdictional findings would have to be raised in an appeal from the dispositional order."].)

11

anger management classes, was participating in weekly therapy, had begun reading books on how to deal with defiant children, and voluntarily sought other resources to help manage her emotions. (*Id.* at p. 134.) It also appeared from the record that the primary motive for finding jurisdiction was not to protect the child but to provide services to assist the mother. (*Id.* at p. 139.)

In contrast, here, mother never accepted any culpability for the incident, there was evidence this was not the first time mother had struck or injured I.H., mother was not compliant with the process, and mother was resistant to services. Indeed, as alleged in the petition and reported by I.H., mother hit I.H. in the face with an open hand causing an inch-long cut on I.H.'s forehead, pulled I.H. by the hair, and threw I.H. to the ground. I.H. reported that the week before this incident, mother drank and then proceeded to hit I.H., make fun of her, and kick her. There is other evidence indicating mother has struck I.H. on other occasions; I.H. recounted that mother "normally only hits [her] when [she] do[es]n't listen," and that her usual form of discipline is to spank her with objects. Mother too reported that she would usually discipline I.H. by spanking her or by slapping her on the arm or shoulder. Mother also previously struck father with a car while he was holding I.H., causing them both to fall. Therefore, even if, as mother contends, I.H. was not seriously injured in this instance, there is substantial evidence I.H. is at substantial risk of serious physical harm inflicted nonaccidentally by mother in the future. That is a sufficient basis for a jurisdictional finding pursuant to section 300, subdivision (a).

Having found substantial evidence to support a finding of jurisdiction based on section 300, subdivision (a), we need not address mother's contention that there is insufficient evidence to support a finding of jurisdiction based on section 300, subdivision (b). (*In re I.J.* (2013) 56 Cal.4th 766, 773 [" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of

jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' "].) Accordingly, we conclude substantial evidence supports the juvenile court's jurisdictional findings.

### III. Removal

Mother contends there is insufficient evidence to support removal of the minor from her custody because I.H. was at no risk of substantial danger and reasonable means could have been employed to avoid removal. We conclude substantial evidence supports the juvenile court's finding that mother's conduct and actions prior to, during, and since the January 26, 2014 incident demonstrated a substantial risk of danger to I.H.'s physical health, safety, protection, or emotional well-being if she were returned to mother and that there are no reasonable means to protect her without formal removal from her parents' physical custody.

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) The court must also "make a determination as to whether reasonable efforts were made to prevent or eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (d).)

We address mother's contention that I.H. was not at risk of substantial danger if returned to her. Though we acknowledge, as mother argues, that I.H. indicated a desire to return to her mother and attempted to provide an alternate version of events to suggest

13

her injuries were accidental, at the dispositional stage of a dependency proceeding we are focused not on the child's wishes but on her protection. (See *In re Lana S.* (2012) 207 Cal.App.4th 94, 105 [focus is " ' " 'averting harm to the child' " ' "].) Additionally, I.H.'s attempts to excuse her mother's abuse coincided with mother's attempt to make I.H. feel guilty for reporting the abuse, telling I.H. that she was being placed in foster care because " 'that's what happens when you tell people I hit you, they have to protect you.' " Also, there was substantial evidence that this was not a one-time incident, but that mother had hit I.H. and placed her at risk of harm on multiple occasions, including the week prior to this incident. Many of these incidents occurred when mother had been drinking alcohol, but mother continued to deny that she had any issues with alcohol or substance abuse, denied that she had hurt I.H, and denied that she had any issues with anger or that she had been a perpetrator in any instance of domestic violence with father. Mother also asserts she was "eager to start services" if required. The record does not support this assertion; instead, the record indicates mother felt services were irrelevant to her and denied that she needed them, but that she would attend if ordered to do so by the court. Thus, there was substantial evidence that I.H. was at risk of substantial danger if returned to mother.

Mother's next contention is that there were reasonable means to prevent removal, because she and I.H. could have been placed on a family maintenance plan (see § 16501, subd. (g)), with supervision by the Department instead. However, mother has already demonstrated a refusal to comply with the directives of the Department, has struggled to comply with the direction of the court, and has demonstrated her willingness to instruct I.H. to hide any incidence of abuse to prevent intervention. Indeed, mother refused to leave at the end of a visit; she chastised I.H. for reporting the abuse; when directed not to discuss the case or make promises to I.H., mother responded that "she would tell the [minor] whatever she wants because she is the mother"; she repeatedly interrupted the

14

court during the hearing after being advised not to do so; and she addressed the court to challenge its assessment of the facts contrary to counsel's advice. Mother also could not state where she and I.H. would be living if I.H. were returned to her care, though she promised she would be able to provide that information. It was reasonable for the juvenile court to conclude, based on this record, that a family maintenance plan would not be an adequate means of protecting I.H. Therefore, substantial evidence supports the juvenile court's finding that removal was necessary.

Accordingly, substantial evidence supports the juvenile court's dispositional order.

## DISPOSITION

The findings and orders of the juvenile court are affirmed.

                               BUTZ            , J.

We concur:

      BLEASE          , Acting P. J.

      DUARTE         , J.

15